UNITED STATES DISCTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES THURMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-3098 |
| ) | |
| PREMIER SECURITY ) | |
| CORPORATION and APEX3 ) | JURY TIAL DEMANDED |
| SECURITY, ) | |
| ) | |
| Defendants ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Charles Thurman, by and through his counsel, brings claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* (the "FLSA") against Defendant Apex3 Security ("Apex3") and Defendant Premier Security Corporation ("Premier"), and alleges, upon personal belief as to Thurman and his own acts, and as for all other matters, upon information and belief, and based upon the investigation made by Thurman's counsel, as follows:

## NATURE OF THE ACTION

1. Thurman contends that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by knowingly and intentionally discharging Thurman from his position as Director of Security in retaliation for Thurman's complaints regarding Defendants' failure and refusal to properly pay certain employees, namely Security Shift Managers, for all overtime hours worked in excess of 40 hours per week.

## PARTIES

1

2. Plaintiff Charles Thurman is a citizen of the State of Illinois who worked for Defendants as the Director of Security and Public Safety at Northshore University HealthSystem's Evanston Hospital. Throughout this period, Thurman was an "employee" as defined by the FLSA, 29 U.S.C. §203(e)(1).

3. Defendant Premier Security Corporation is an Illinois corporation, headquartered in Illinois that provides contract security officer programs for properties throughout the Chicago metropolitan area. Upon information and belief, Defendant Premier is the parent company of Defendant Apex3 Security. At all times relevant, Premier was Thurman's "employer" as defined by the FLSA, 29 U.S.C. §203(d) and was actively engaged in the conduct described herein.

4. Defendant Apex3 Security ("Apex3") is an Illinois corporation, headquartered in Illinois, that provides security services throughout the Chicagoland area. At all times relevant, Apex3 was Thurman's "employer" as defined by the FLSA, 29 U.S.C. §203(d) and was actively engaged in the conduct described herein.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

6. This Court has jurisdiction over Thurman's claims pursuant to 28 U.S.C. §1331 because Thurman's claims arise under the FLSA.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because Defendants reside in, and conduct business within, this District and because the actions and omissions giving rise to the claims pled in this Complaint occurred within this District.

**FACTUAL BACKGROUND**

8.     Upon information and belief, Defendants enter into contracts with clients to provide professional uniformed security personnel and other services throughout the Chicagoland area.

9.     Upon information and belief, Northshore University HealthSystem ("NUHS") is one of Defendants' clients.

10.    Thurman worked for Defendants as a full-time Director of Security at NUHS's Evanston Hospital in Evanston, Illinois from June, 2016 until November 30, 2016.

11.    Thurman's responsibilities included, amongst other things, managing a team of approximately sixty (60) security personnel, managing Defendants' security department and handling scheduling and attendance of security guards and shift supervisors. At the beginning of his employment, Thurman reported to Tony Ringgold, Corporate Director, who in turn reported to Michael Potter, Vice President of Operations.

12.    During his first week of employment, Thurman was introduced to Defendants' payroll and scheduling software, "WinTeam." Upon information and belief, Tony Ringgold and Rod Adar were responsible for managing Defendants' payroll.

13.    Approximately ten days after Thurman began his employment, Mr. Ringgold resigned and Thurman was tasked with managing and executing the payroll by Michael Potter.

14.    Without any substantive training on WinTeam, Thurman was assigned certain payroll responsibilities, which he performed.

15.    Shortly thereafter, Thurman was approached by a Security Shift Manager, who complained about the miscalculation of her overtime pay.

16.    When Thurman investigated her complaint, he noticed that Defendants' WinTeam software system had been manually changed to pay all Security Shift Managers a $12.00 flat rate (also referred to as "Director's Pay") for any hours worked in excess of 40, as opposed to 1½-

times their regular hourly rate.[1]

17. Thurman immediately alerted Michael Potter of this issue, who responded that this was the way Defendants paid Security Shift Managers and gave Thurman a verbal directive to continue to do so. Thurman then requested an explanation as to why they were being paid less than time-and-one-half, to which Michael Potter told Thurman, "[l]ook, just do it. Shut up and do what I tell you."

18. From approximately the end of June, 2016 to September of 2016, each time Thurman was required to run payroll for Defendants, Thurman brought to the attention of Michael Potter that they were not paying Security Shift Managers the proper time-and-one-half overtime rate. Thurman also escalated all complaints he received from Security Shift Managers to Michael Potter.

19. Each time Thurman ran payroll, he refused to pay the Security Shift Managers less than time-and-one-half their regular hourly rate. However, Defendants would manually change the WinTeam system from time-and-one-half to "Director's Pay" for any hours worked in excess of 40 hours.

20. From approximately June of 2016 to September of 2016, on three separate occasions, Thurman noticed that someone else had accessed the WinTeam system and changed the payroll to "Director's Pay" for Security Shift Managers.

21. In approximately October of 2016, Sean Chipek was hired as Defendants' new Corporate Director, replacing Mr. Ringgold. When Security Shift Managers began complaining of the miscalculation of their overtime pay to Mr. Chipek, he raised the issue with Thurman. Thurman informed him that he believed the overtime compensation was wrong and that he refused

---

[1] For example, if a Security Shift Manager was paid at an hourly rate of $14.00 per hour, h/she would be paid a flat rate of $12.00 for any and all overtime hours, as opposed to a $21.00 overtime premium rate.

to manually code their overtime pay to "Director's Pay," or less than 1½-time their regular hourly rate.

22. Soon thereafter, Mr. Chipek informed Thurman he was required to pay the Security Shift Managers at a "Director's Pay" rate for any and all overtime hours worked. Thurman refused.

23. The next time Thurman ran payroll, at approximately the end of October, 2016, Defendants' WinTeam software had been changed to automatically code any Security Shift Managers' overtime pay at a "Director's Pay" rate of $12.00 per hour. Around this time, Michael Potter also removed Thurman's access and ability to manually change the overtime rate in Defendants' WinTeam system, and informed Thurman that if he attempted to change the overtime rate for Security Shift Managers, he would be let go.

24. On or around November 15, 2017, Thurman was terminated by Defendants, in direct retaliation for his complaints and refusal to take part in Defendants' scheme to withhold Security Shift Managers' earned overtime pay, in direct violation of the FLSA.

## COUNT I
## Violation of the FLSA – Retaliatory Discharge

25. Thurman incorporates the foregoing allegations as if fully set forth herein.

26. Defendants have violated 29 U.S.C. § 215(a)(3) by discharging Thurman because he voiced concerns and complaints to Defendants for violating the FLSA in failing and refusing to pay overtime to certain employees, namely shift supervisors, of Defendants.

27. As a direct and proximate result of this unlawful discharge, Thurman is entitled under 29 U.S.C. § 216(b) to recover from Defendants such legal and equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3), including without limitation, payment of wages and benefits lost, and an additional equal amount as liquidated damages. Thurman is also entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

28. As a direct and proximate result of his unlawful discharge, Thurman suffered and continues to suffer emotional distress, embarrassment and humiliation.

29. The actions of Defendants in unlawfully discharging Thurman were done intentionally, willfully, and wantonly and with reckless disregard for the rights and well-being of Thurman, as well as certain employees of Defendants who should have been paid overtime, such that Thurman should also be awarded punitive damages in an amount which will punish Defendants and discourage others from similar conduct.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in the above-captioned matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charles Thurman, by and through his attorneys, demands judgment against the Defendants, jointly and severally, and in favor of Plaintiff for a sum that will properly, adequately and completely compensate Plaintiff for the nature, extent and duration of his damages, the costs of this action and as follows:

A. Declare and find that Defendants, jointly and severally, willfully retaliated against Plaintiff in violation of the FLSA;

B. Granting judgment in favor of Plaintiff;

C. Award lost wages and compensatory damages in an amount according to proof;

D. Award liquidated damages;

E. Award pre-judgment interest on all compensatory damages due;

F. Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

G. For such further relief as the Court deems just and equitable.

Dated: July 18, 2018 Respectfully Submitted,

*/s/ Catherine T. Mitchell*
Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 *f*
lawyers@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I, the attorney, hereby certify that on July 18, 2018, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

                                                                                                 */s/ Catherine T. Mitchell*